# White's Estate.

*Practice, O. C.—Decedent's estates—Adjudication of account—Distribution of funds—Bill of review—Proof of fraud—Act of October 3, 1840, P. L. 1 (1841).*

1. Where a fund has been distributed in accordance with the terms of a decree of the Orphans' Court, a bill of review will not lie as a matter of right, but only where fraud has been shown to have induced the decree, this latter being an indispensable condition. Upon consideration of such a bill of review, therefore, it is error for the court to undertake to decide the merits of the controversy until after it has been decided that fraud has been sufficiently alleged and proven to give it jurisdiction. Where there is no finding of such fraud, the inquiry as to the construction of the will is premature.

2. The confirmation of an auditor's report making distribution of the fund in the hands of an administrator is a judicial decision determining finally, except as appealed from, the meaning and legal effect of the will touching the rights of parties to take thereunder. Notwithstanding no appeal had been taken from the adjudication, it still remains open for review and correction, but only on certain well defined conditions. Before a fund of this character has been paid out, it is in the power of the court to grant a review for the correction of any mistakes shown to have been made, as required under the Act of October 13, 1840, P. L. 1 (1841). Where, however, the fund has been paid out in accordance with the terms of decree, a bill of review will not lie as matter of right, but only where fraud has been shown to have induced the decree, this latter being an indispensable condition.

Argued March 15, 1915. Appeal, No. 296, Jan. T., 1914, by Olivia W. Jackman, from decree of O. C. Clinton Co., dismissing petition to have confirmation of auditor's report stricken off and for a further hearing in Estate of James White, Deceased. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Petition to strike off confirmation of auditor's report and refer it back to the auditor for further hearing. Before HALL, P. J.

The opinion of the Supreme Court states the case.

The court entered a decree dismissing the petition. Petitioner appealed. `

*Error assigned* was the decree of the court.

*Max L. Mitchell,* with him *B. F. Geary* and *W. C. Kress,* for appellant.

*R. B. McCormick,* with him *Brown & Stevenson,* for appellees.

OPINION BY MR. JUSTICE STEWART, April 12, 1915:

James White, a citizen of Clinton County in this State, died 5th March, 1855.  By his last will, after giving to his widow, Olivia P., all of his furniture and household property absolutely, he directed that she should take, receive and enjoy the rents and income of all the remaining part of his estate, real and personal, so long as she remained his widow.  Power was given the executors of the will, upon request of the widow to sell and dispose of any part of the estate, the proceeds of any such sale to be invested in real estate securities, the interest on the same to be paid to the widow during her life or widowhood, and upon the death of the widow the entire estate was given to an only son, Joseph Jackman White.  Certain provisions followed defining and determining the widow's share in case of her remarriage, and making ultimate disposition of the estate in case of the death of the son before that of the widow, and the latter's remarriage. The son died unmarried and intestate at Jamesville, Wisconsin, 26th December, 1882;  the widow never remarried and died at Jamesville 21st November, 1910.  At the death of the widow nothing remained of the estate of James White, her husband, but $5,000 secured by a mortgage on a certain property in Lock Haven, which had been owned by James White, but which had been sold by his executor to one R. W. McCormick.  The mortgage

was for the balance of purchase-money. During the lifetime of the executors, the interest on the mortgage was regularly collected by them and paid over to the widow. They having died, and no one succeeding them in charge of the estate which had all been administered upon with the exception of this mortgage, the owner of the mortgaged premises paid the interest directly to the widow up to the date of her death. The owner desiring to pay off the mortgage presented his petition to the Orphans' Court setting forth these facts, and praying that an administrator, d. b. n., on the estate of James White be appointed. The court thereupon appointed Thomas R. Harter, who having qualified as such administrator immediately collected from the owner of the mortgaged premises the full amount of the debt, and entered satisfaction upon the mortgage. There being no debts of the estate, the administrator proceeded at once to file and settle an account. The account embraced nothing but what had been received on the mortgage and the expense of the administration. It was duly confirmed 23d October, 1911. Two days thereafter an auditor was appointed to distribute the balance appearing on the account as confirmed, to and among those legally entitled thereto. Public notice of the audit was given as required, report was made to the court at the succeeding term, and on 6th December, the report was regularly confirmed and distribution in accordance therewith ordered. By the report and the decree of the confirmation, it was determined that the parties entitled to take were the children of Allison White and James Guyer, or their representatives, under the following provision contained in the will of James White, the testator. "Should my son die before coming into possession of any portion of my estate as above directed, my wife is yet to receive the entire income of my estate in case she remains my widow, and in the event of her being married at the death of my son, or after, it is my desire that she still receive the income of the one-third of my estate as above, during her

lifetime, and the other two-thirds part of my estate, which I have directed to be sold upon her marriage, I give and bequeath to the children of my brother, Allison White and to James Guyer, son of Charlotte Guyer, share and share alike, as also the other third part on her death." Upon the confirmation of the auditor's report, the administrator proceeded to pay and did pay, in accordance with the schedule therein contained, to the parties named or their representatives the entire balance of the estate in his hands. On the 16th July, following, Olivia W. Jackman, the appellant, presented her petition to the Orphans' Court, in which she set forth that under the will of James White his estate vested immediately upon his death in his son, Joseph Jackman White, subject to a life estate in the widow, and that upon the death of said Joseph Jackman White, unmarried, without issue and intestate, his estate vested in his mother, widow of testatrix, as his sole heir at law, and that she by her last will gave her entire estate to her niece, Olivia W. Jackman, the petitioner, who alone by reason of. the premises had the right to the fund paid over to the administrator, d. b. n., and distributed by the court. The petition further averred, "that the proceedings leading to the distribution of the proceeds of said mortgage as above set forth were carried on with the intent to cheat and defraud the petitioner; that these facts (recited in the petition) were well known to all the parties who executed and carried on the proceedings in the Orphans' Court in this county, and that the award by the auditor of the money in the hands of T. R. Harter, administrator, was contrary to the evidence produced before him and contrary to law, and that the entire proceeding looking to the distribution of said funds was surreptitious, secret, fraudulent and void, with intent to cheat and defraud the petitioner out of her rights." The prayers were six in number. The petitioner having an entirely reasonable apprehension that the court would decline five of them because not within its power to grant,

asked the court in the fifth to strike off the confirmation
of the auditor's report and refer same back to the auditor
for further hearing, for the reasons stated in the petition.
So the matter was reduced to a simple bill of review. A
rule was granted to show cause. The respondents an-
swered denying the averments in the petition so far as
they charge fraud or fraudulent intent in connection
with the auditor's report or the proceedings that led up
to it, and while admitting that petitioner was sole leg-
atee under the will of Olivia W. Jackman, denied that
such fact gave her any legal right to participate in the
funds distributed. A replication was filed in which
issue was joined. Just what the issue was was left very
indefinite. The only pertinent issue, however, must
have been whether fraud had been practiced in the pro-
ceeding leading up to the distribution. By agreement
of counsel evidence was taken and submitted, and upon
this evidence the case was heard by the court. This
somewhat lengthy statement of facts is necessary to a
correct understanding of the order we purpose to make
in the case.

Instead of deciding the issue raised by the pleadings,
the learned judge of the Orphans' Court addressed him-
self to a consideration of the will of James White, de-
ceased, and arriving at the same conclusion with respect
to its meaning and legal effect as led to the confirmation
of the auditor's report, namely, that the gift to Joseph
Jackman White, through whom the petitioner claims,
was contingent on conditions that had never been ful-
filled, he accordingly directed a discharge of the rule,
leaving the question of fraud in connection with the
settlement of the account and the auditor's report un-
decided. It is from this order and decree that the ap-
peal has been taken and the assignments of error raise
no other question than the correctness of the court's rul-
ing with respect to the proper construction of James
White's will. These assignments overlook the fact, or
at least do not give it its legal effect, that the confirma-

tion of the auditor's report making distribution of the funds in the hands of the administrator was a judicial decision determining finally, except as appealed from, the meaning and legal effect of the will touching the rights of parties to take thereunder. Notwithstanding no appeal had been taken from the adjudication, it still remained open for review and correction, but only on certain well defined conditions. Before a fund of this character has been paid out, it is in the power of the court to grant a review for the correction of any mistakes shown to have been made; and indeed this much is required of the court, under the Act of October 13, 1840, P. L. 1 (1841), Kinter's App., 62 Pa. 318; Lehr's App., 98 Pa. 25; Bear's Est., 162 Pa. 547. Where, however, the fund has been paid out in accordance with the terms of decree, a bill of review will not lie as matter of right, but only where fraud has been shown to have induced the decree, this latter being an indispensable condition. Russell's Admrs. App., 34 Pa. 258. In the case last cited it is said by STRONG, J., "It was to prevent such injustice that a bill of review is denied after a 'balance found due shall have been paid over.' The proviso is a protection to the accountant, as truly as to the cestuis que trust. The original decree is presumably right and it would be neither equity nor justice to punish the accountant for yielding obedience to it." While the review does not lie as a matter of right to correct errors after the fund has been paid out, yet if fraud be shown to have entered into the decree or induced it, notwithstanding the fund has been paid out, the court may, in the exercise of a sound discretion direct a review, Yeager's App., 34 Pa. 173. In the present case the fund was paid out in accordance with the decree, therefore nothing could avail the petitioner in her effort to have the review except as she showed fraud. We waive the question of the sufficiency of her averments with respect to this feature of the case, since the court below accepted them as sufficient, entertained the

bill, and directed testimony to be taken. The one question then was the sufficiency of the evidence produced. Except as the court was satisfied from the evidence submitted that fraud entered into the determination, a review could not be allowed. Riddle's Est., 19 Pa. 431. Now there being no finding of such fraud, the inquiry as to the construction of the will was not only premature, but it can lead to no definite result, save on a condition to be hereinafter referred to. We intimate no view of this court with respect to the correctness of the construction of the will as expressed in the auditor's report. To do so would be as premature as was the action of the court below. Yet this much may be said: Were we to consider the question and reach a conclusion adverse to the view expressed in the auditor's report, affirmed by the lower court, what would a reversal accomplish? No decree here entered embodying our view with respect to the true construction of the will of James White would restore the petitioner to her rights as a distributee under the will, for it would still remain for her to show her right to question the correctness of the auditor's report by proving that fraud had entered into it. Until she had advanced so far with her case, the door would be barred against all inquiry into the correctness of the adjudication, by the fact that her proceedings had not been begun until after the fund had been paid out. "It is not the province of courts to give opinions on moot questions or abstract propositions, and to enter judgments or decrees to which effect can not be given." Faust v. Cairns, 242 Pa. 15. In the present case effect could only be given our decree in case it followed an affirmance of the order of the lower court, which might or might not be the case, depending on the construction to be given the will of James White. The consideration of that question is not now properly before us, and therefore nothing remains but to dismiss this appeal with a procedendo, and it is now so ordered.