660 A.2d 76

**In re Donald T. JONES, Deceased.**

**Appeal of Aaron WALKER, William Walker, Marion Walker Padden and John Morris.**

Superior Court of Pennsylvania.

Argued Feb. 15, 1995.

Filed May 11, 1995.

Reargument Denied July 17, 1995.

464

465

William P. Hogan, Easton, for appellant.

Jeffrey E. Piccola, Harrisburg, for Strader, Hatfield and Munley, participating parties.

James J. O'Connor, Scranton, for Bordi, participating party.

Before WIEAND, BECK and BROSKY, JJ.

BECK, Judge:

The issue is whether, in an intestacy proceeding, Section 3521 of the Probate, Estates and Fiduciary Code permits the trial court to order the original distributees to return a portion of their distribution in order to satisfy the later valid claims of additional heirs discovered after the confirmation of the account. The trial court ordered the original distributees to return a portion of their distribution and we affirm.

Donald T. Jones died intestate on November 26, 1989. Appellee Peter Bordi (the "administrator") applied for and received Letters of Administration on November 29, 1989. No bond was required. Advertisement began on December 5, 1989, and a First and Final Account was filed on February 23, 1990.[1] The five original heirs were maternal first cousins of the decedent: Aaron Walker, William Walker, Marion Walker Padden, John Morris, and Thomas Walker.[2] A Supplemental Account was filed on March 28, 1990, and the account was approved by the court on April 24, 1990. A Decree of Distribution and Adjudication was confirmed absolutely on May 7, 1990. The Administrator made actual distribution of $72,431.28 to each of the maternal cousins by May 29, 1990.[3]

About three weeks after distribution was made, on or about June 20, 1990, counsel for the administrator received a letter from counsel for appellee Fiduciary Research, Inc. ("FRI"). The letter advised that FRI had been assigned the interests of three paternal cousins who are additional heirs to the estate.[4]

1. This filing was technically premature. Section 3501.1 of the Probate, Estates and Fiduciary Code provides that "[a] personal representative may file his account at any time *after four months from the first complete advertisement of the original grant of letters, but shall not file it earlier* unless directed to do so by the court." 20 Pa.C.S. § 3501.1 (emphasis added). Appellants vaguely argue that this irregularity should somehow nullify the appellees' claim to the inheritance. We note, however, that it was not until appellees filed their Petition for Review that appellants voiced any objection to the procedures utilized by the administrator. There were several junctures at which such objection could have been raised, particularly in exceptions to the original distribution order. We agree with the master's determination below that this issue is waived. In any event, even if the administrator had waited the requisite time to file his account, there is no showing that the additional heirs would have been found earlier. Moreover, had the additional heirs been involved from the beginning, appellants simply would have received the same ⅛ distribution awarded in the order they now challenge.

2. Thomas Walker died during the pendency of these proceedings. No substitution or appeal has been filed on his behalf.

3. This was less than the total amount due the cousins according to the first decree. The administrator apparently retained the balance of each total award of $75,631.28 for certain expenses.

4. FRI had previously sent the following unsolicited letter dated May 22, 1990 to appellees, the additional heirs:

Upon receipt of this correspondence, administrator's counsel contacted the original distributees by telephone, and also mailed each of them FRI's letter dated June 21, 1990.

The administrator's letter stated:

As you were recently informed, there is the possibility of additional heirs who may have entitlement to share in the Estate of Donald T. Jones.

Although distribution has been made in accordance with Court Order, it is advisable that, in order to save future costs and aggravation, you should secure the monetary distribution you recently received until this matter is resolved.

Specifically, if there were an additional five (5) heirs, there is a potential that each of the heirs who have received distribution, would have to divide his or her distributive share by one-half.

Enclosed is a copy of the letter I received from Attorney Morris [counsel for FRI] and the genealogical chart he provided.

> We locate missing heirs to estates. You are one such heir. A substantial inheritance awaits heirs who make timely claims.
>
> We are so sure of your stake in an existing estate that we are willing to prove your interest at our own expense. All we need is your assurance, [Mrs. Hatfield], that we will be rewarded when your inheritance is paid to you. Please read the enclosed agreement.
>
> As you can see, if you receive no money, you owe us nothing. I promise you will have no expenses at any time. We disclose details about estates only after receiving agreements. This shields us from heirs who would take unfair advantage of our genealogical achievements.
>
> After we receive your agreement we will be able to obtain further information such as the expiration date for claims, or when you may expect to receive your inheritance (after we validate your claim). Such information is unavailable to us without your cooperation, so I urge you to send your agreement today....

A post-script states "I would not have wasted time locating you if I was not 99% certain of your opportunity to collect an inheritance." The agreement includes a partial assignment of rights and provides that FRI's fee is 35% of the inheritance obtained. Only upon signing and returning their assignment agreements did the appellees discover in a June 11, 1990 letter from FRI that their first cousin Donald Jones had died intestate.

Be assured that we will require the strictest proof of these potential claims.

I will keep you advised of developments in this matter. Later that month, administrator's counsel arranged a meeting with the five original distributees to discuss the apparent existence of additional heirs, and asked each to "bring to this meeting a check for half of the amount that has been tendered to you, or $36,142.58, which will be deposited in an interest-bearing account until these claims are resolved." None of the appellants turned over any of the funds to the administrator. Instead, they retained counsel.

On July 15, 1991, about fourteen months after the account was confirmed, and about thirteen months after the original distributees were notified, FRI filed a Petition for Review and Rehearing pursuant to 20 Pa.C.S. § 3521, Probate, Estates and Fiduciary Code, on behalf of the additional heirs, appellees Gwendlyn Jones Strader, Lois Jones Hatfield and Harriet Jones Munley. Section 3521 provides:

If any party in interest shall, within five years after the final confirmation of any account of a personal representative, file a petition to review any part of the account or of an auditor's report, or of the adjudication, or of any decree of distribution, setting forth specifically alleged errors therein, the court shall give such relief as equity and justice shall require: Provided, That no such review shall impose liability on the personal representative as to any property which was distributed by him in accordance with a decree of the court before the filing of the petition. The court or master considering the petition may include in his adjudication or report, findings of fact and of law as to the entire controversy, in pursuance of which a final order may be made.

Appellees, in their Petition, requested that the original distribution be reviewed and amended, and claimed that instead of a ⅕ division to each original distributee, the redistribution should reflect an equal ⅛ share for each of the eight first

cousins.[5]

After a two day hearing, the master made recommendations based upon his findings of fact and conclusions of law including, *inter alia,* the factual findings that the additional heirs were genuine first cousins of the decedent, and that each original distributee still retained a significant portion of the inheritance. The master concluded that the Jones estate should be redistributed to reflect equal ⅛ shares to each cousin. Exceptions were filed. Based upon the master's report, the court denied the exceptions and entered an order directing the original distributees to return certain funds so that the proposed redistribution could be accomplished. This appeal followed.

## Standard and Scope of Review

■ Our scope of review in this appeal from an Orphan's Court decree is limited. We will not disturb the trial court's findings absent manifest error; we may modify the decree only if the findings upon which the decree rests are unsupported by the evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence. *Appeal of Gannon,* 428 Pa.Super. 349, 631 A.2d 176 (1993). Our review of the record reveals that the court's factual findings were indeed supported by the evidence.

Nonetheless, appellants argue that the trial court erred in ordering them to refund certain money for redistribution to the appellees because the appellees delayed too long in filing their Petition to Review and therefore should be barred from recovery by res judicata and laches.

■ We first note that review of a confirmed account or distribution traditionally is granted as of right only where (1) there are errors of law appearing on the face of the record; (2) new matter has arisen since the confirmation of the account or decree; or (3) where justice and equity require a

5. This equal division is in accordance with the intestacy law, which provides that first cousins, who are in the same degree of consanguinity to the decedent, shall take in the same degree. 20 Pa.C.S. § 2104.

review and no person will suffer thereby. *Estate of Roart*, 390 Pa.Super. 38, 568 A.2d 182, 185 (1989). Clearly, in this case the review was properly allowed on the basis that "new matter" had arisen in the person of each additional heir.

## The Applicable Law

■ We next examine the issue of whether the court, under circumstances such as these, may order original distributees to refund part of their inheritance so that it may be redistributed to newly discovered heirs. In order to answer this question we have traced the relevant statutes and the case law. Based on language in the current statute we conclude that the trial court is permitted to order original distributees to return part of their distribution.

Appellants, in their arguments to the contrary, rely on a number of decisions which held that a court could not, in the absence of fraud, order the return and redistribution of the decedent's property after a distribution had already been made. *See, e.g., Downing v. Felheim*, 309 Pa. 566, 164 A. 598 (1932); *Ferguson v. Yard*, 164 Pa. 586, 30 A. 517 (1894).[6]

However, each of the cases cited by appellants was decided in accordance with earlier statutes that expressly precluded the review of a decedent's account *after distribution was made*, in the absence of fraud. For example, the relevant statute enacted in 1840 provided that:

[I]t is peremptory on the court to grant a bill of review, upon the application of an executor or administrator, alleging error in the account, *or any person interested*, supported and sustained by oath of the applicant at any time within five years after final confirmation of the account; *provided* the balance so decreed shall not have been *actually* paid by the executor or the administrator. This is the only exception, and would seem to be the only matter upon which the discretion or judgment of the court can find excuse or justification in refusing to grant review.

6. We note that there is no allegation of fraud by the cousins in this case.

*Bishop's Estate,* 10 Pa. 469, 471 (1849) (emphasis in original). *See also Bear's Estate,* 162 Pa. 547, 29 A. 856 (1894); *White's Estate,* 249 Pa. 115, 94 A. 470 (1915).

Section 48 of the Fiduciary's Act of 1917 also did not permit review after the distribution had been made. *Downing,* 309 Pa. at 572, 164 A. at 600. *See also Ferguson, supra,* 164 Pa. 586, 30 A. 517 (a voluntary payment by an administrator cannot be recovered back in the absence of fraud or an agreement to refund in case of overpayment); *Estate of Mack,* 111 Pa.Super. 20, 169 A. 468 (1933) (previous distribution barred petition to review). *Cf. Estate of Turnbull,* 88 Pa.Super. 482 (1926) (review permissible where no payment had yet been made).

Section 48 was in turn replaced by section 721 of the Fiduciary's Act of 1949, codified at 20 P.S. § 320.721. Thereunder, the court could give "such relief as equity and justice shall require," but the court was specifically *not authorized* to grant review *"as to any property distributed* by the personal representative in accordance with a decree of court before the filing of the petition." 20 P.S. § 320.721 (emphasis added). *See Estate of Smith,* 38 Erie L.J. 1, 11 (1954).

Most significantly for the instant matter, section 721 was amended in 1970. Act No. 108, § 4, P.L. 336, May 5, 1970. The 1970 amendment removed the language that precluded review after distribution. This new version of section 721, which was later recodified at the present 20 Pa.C.S. § 3521, permits the court to "give such relief as equity and justice require." Unlike the previous statutes it does not bar review after distribution. The statute enumerates the sole limit to the permissible relief as follows:

> Provided, That no such review shall impose liability on the personal representative as to any property which was distributed by him in accordance with a decree of court before the filing of the petition.

20 Pa.C.S. § 3521.

In light of the fact that the bar in the previous statute was not reenacted we hold that the legislature intended to change

the statute to permit review even where property has been distributed.[7] The sole prohibition protects the administrator

7. In fact, another section of the Decedents, Estates and Fiduciaries Code apparently authorizes refund and redistribution as a possible remedy where additional distributees, previously unknown, appear:

§ 3540. Absentee and additional distributees

(a) Distributions due absentees.—

(1) If the continued existence or whereabouts of an heir devisee or legatee who once existed cannot be ascertained at the time of the audit of the personal representative's account, the court ... shall direct that any property distributable to the absentee shall be converted into money that shall be paid into the State Treasury, through the Department of Revenue. The moneys shall be held in a custodial capacity subject to refund, without appropriation,....

(b) Possibility of additional distributees.—*If the existence of a person or persons would affect the distribution of an estate* but there is no proof that such a person even existed, and the court is satisfied that all reasonable steps have been taken to determine whether such a person existed, *the court may award distribution of the estate to those who would be entitled if no such person existed, with or without refunding bonds. Any such bond* shall be without security, shall be in such form and amount as the court directs, shall be executed by each distributee and filed with the clerk, and *shall provide that if, within seven years or any shorter period fixed by the court, it is later established that there is an additional person or persons entitled to share in the distribution of the estate, the distributee upon demand will return such portion or all of the property received by him as the court may direct or, if it has been disposed of, will make such restitution as the court deems equitable....*

20 Pa.C.S. § 3540 (emphasis added). There is no indication that this procedure was considered by the court below, prior to distribution in accordance with the initial decree, and the parties do not cite the statute. It seems that the provision always applies, since the existence of unknown persons always "would affect the distribution of an estate." § 3540(b). In any event, it is not clear why, if "there is no proof that such a person even existed," known distributees or the personal administrator would invoke the procedures described. This provision seems to create a precautionary measure which is voluntary in nature. We have found no relevant cases citing the statute.

We also note that several provisions in the Uniform Probate Code (which Pennsylvania has *not* adopted) apparently authorize refund and redistribution where additional heirs come forward after distribution. Section 3–909 provides that "[u]nless the distribution or payment no longer can be questioned because of adjudication, estoppel, or limitation, a distributee of property improperly distributed or paid, ... is liable to return the property improperly received and its income since distribution." If the distributee has disposed of the property, "he is liable to return the value as of the date of disposition." Uniform Probate Code, *Uniform Laws Annotated* (West 1983) (Supp.1994). Section 3–1006 also provides that:

Unless previously adjudicated in a formal testacy proceeding or in a proceeding settling the accounts of a personal representative or

where his or her payment was sanctioned by the court, as in this case.

We have found no binding decisions, nor have the parties directed our attention to any, that dispose of facts such as ours under the current statute. Under the current statute, the right of additional heirs to obtain review by the court and relief from original distributees within five years from confirmation of the account is limited only by the court's determination of "equity and justice." The statute does not create a bar against ordering the return and redistribution of previously distributed property.

In this case, the master heard testimony from all interested parties and recommended that the original distributees be ordered to refund part of the inheritance so that redistribution to the newly discovered heirs could be accomplished. He found that the newly discovered heirs did not unduly delay in asserting a claim for their intestate portion of the estate, and that any prejudice suffered by appellants was attributable to their own actions and not to any delay by appellees.

In summary, we find that the trial court did not abuse its discretion in ordering that appellants return part of the distribution made to them in order to satisfy the later valid claims of the additional heirs discovered after confirmation of the account.

## Res Judicata

Appellants challenge the decree on the basis of res judicata and laches. Res judicata applies only where the

> otherwise barred, the claim of a claimant to recover from a distributee who is liable to pay the claim, and the right of an heir or devisee, or of a successor personal representative acting in their behalf, to recover property improperly distributed or its value from any distributee is forever barred at the later of three years after the decedent's death or one year after the time of its distribution thereof, ... This section does not bar an action to recover property or value received as the result of fraud.

Uniform Probate Code § 3–1006. These authorities appear to permit return and redistribution under circumstances similar to those in this case.

previous proceeding and the current matter share (1) identity of things sued for; (2) identity of causes of action; (3) identity of parties; and (4) identity of the quality or capacity of the parties suing or being sued. *See, e.g., City of Pittsburgh v. Zoning Board,* 522 Pa. 44, 559 A.2d 896 (1989); *Ashbaugh v. Ashbaugh,* 426 Pa.Super. 589, 627 A.2d 1210 (1993). Obviously, the newly discovered heirs were not involved in the proceedings that culminated in the May 1990 distribution decree. Appellants themselves concede that the original distribution decree "is res judicata between Administrator and Appellants." Appellants somehow argue from this correct legal conclusion that the "omitted heirs, having been no party to the original account proceedings," are entitled only to monies which may remain in the administrator's hands. We do not see how the decree, to which the additional heirs were not parties, could be res judicata as to them. This argument therefore fails.

## Laches

■ Appellants also challenge the decree on the basis of laches. The decedent's account was finally confirmed on May 7, 1990. FRI initially contacted the additional heirs on May 22, 1990. FRI then contacted the estate's attorney who contacted the original distributees on June 20, 1990. The Petition for Review was not filed until July 15, 1991, about fourteen months after the estate was confirmed and the additional heirs were informed about their potential claim. Laches applies to bar recovery by an individual who knows of the existence of a cause of action and yet delays unreasonably in pursuing it; there must be a lack of due diligence and resulting prejudice to the other party. *Brodt v. Brown,* 404 Pa. 391, 172 A.2d 152 (1961); *Snyder v. Queen Cutlery Co.,* 357 Pa.Super. 456, 516 A.2d 71 (1986).

■ Although appellees filed their Petition for Review well within the five year statute of limitations set forth in 20 Pa.C.S. § 3521, appellants point out that *Macpherson's Estate,* 260 Pa. 492, 103 A. 887 (1918), instructs "a delay for less than the period of the statute of limitations may be a bar to relief,

and that each case must be judged by its own facts and circumstances in determining whether the suitor is concluded by delay from asserting his rights." *Id.* at 503, 103 A. at 890.

"The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed, but whether, under the circumstances of the particular case, the complaining party is guilty of want of due diligence in failing to act to another's prejudice." *Estate of Marushak,* 488 Pa. 607, 413 A.2d 649, 651 (1980) (citing *Wilson v. King of Prussia Enterprises, Inc.,* 422 Pa. 128, 221 A.2d 123 (1966); *Leedom v. Thomas,* 473 Pa. 193, 373 A.2d 1329 (1977)). In this case, the court concluded that appellees were not barred by laches from asserting their right to the monies left by their cousin. We find no error in this determination.

FRI contacted the additional heirs by letter dated May 22, 1990, about the possibility of an inheritance.[8] The original distribution to appellants was effected by May 29, 1990. The "new" cousins did not receive any additional information about Donald Jones's death until they signed and returned their contingent fee agreements to FRI. At this point, FRI contacted the administrator about the additional cousins by letter dated June 18, 1990. The administrator's counsel in turn notified the original distributees about this development in late June 1990, and warned them to escrow their newly received inheritance.

However, despite their knowledge that other heirs might have a valid claim, appellants spent part of the money received.[9] It appears from the record that FRI promptly notified appellants of the new heirs' claim. Essentially, it was appellants' refusal to return or even escrow any part of the funds that triggered this legal action. Appellees filed their Petition for Review little more than a year after they knew about their claim. We agree with the court that appellees

8. The record contains no evidence, and no claim is made, that either set of cousins knew about the other, or that the appellees even knew of Donald Jones's death until FRI contacted them.

9. The master nonetheless found that each appellant still retains a substantial amount of the original inheritance.

476

■■■■■■■■■■■

acted diligently, and therefore any prejudice that appellants suffered cannot be attributed to appellees' lack of diligence, but must be attributed to appellants' own actions.

We conclude that the trial court's order was equitable, and did not constitute an abuse of discretion or an error of law.

Order affirmed.