J-A12013-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| IN RE: ESTATE OF THOMAS W. SIBENIK, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: GISELLE LEONARDO, INDIVIDUALLY AND THE LAW OFFICE OF GISELLE LEONARDO, P.A. | No. 748 WDA 2016 |

Appeal from the Order Dated April 29, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 02-13-1787

BEFORE: OLSON, J., SOLANO, J., and RANSOM, J.

MEMORANDUM BY SOLANO, J.:                    FILED NOVEMBER 27, 2017

Appellants Giselle Leonardo, Esquire, individually, and The Law Office of Giselle Leonardo, P.A. (together, "Leonardo") appeal from the April 29, 2016 order of the Orphans' Court Division of the Allegheny County Court of Common Pleas that dismissed with prejudice Leonardo's claim against an estate for legal fees and expenses. We affirm.

Thomas W. Sibenik died testate on December 18, 2012, and his son, Thomas L. Sibenik, was appointed Executor of his estate on September 11, 2013. Leonardo operates a law office in Fort Lauderdale, Florida.[1] On

_____

[1] Leonardo's brief states that Giselle Leonardo is licensed to practice law in Pennsylvania and has an office in Pittsburgh. Appellants' Brief at 7. At oral argument, Appellants' counsel informed us that Leonardo does not have an office in Pittsburgh. Documents filed by Leonardo in this case list as her address a Pittsburgh post office box.

January 25, 2013, Sibenik entered into a Retainer Agreement with Leonardo. The Agreement was in the form of a letter from Leonardo to Sibenik that had as its "Re:" line, "Real Estate, Contracts, Estate Matters." Among other things, the letter included a rate schedule "for the Administration of your Father's Estate" and stated that any disputes regarding fees could be litigated in Broward County, Florida. The letter was signed by "Thomas Louis Sibenik" with a date of "2-18-13." At the time he signed the letter, Sibenik had not yet been appointed Executor.

Sibenik terminated his contract with Leonardo on June 4, 2013. On June 18, 2013, Leonardo sent Sibenik an invoice for $29,256.94 for the work performed during her six-month representation. For the most part, the invoice contained entries relating to estate administration, but there also were a few entries referencing such things as real estate and insurance matters. Most of the entries were for telephone calls that had no other identification. Sibenik determined that the invoiced amount was unreasonable, and he refused to pay it. On October 29, 2013, Leonardo filed a claim against the estate in the amount of $29,256.94.

On March 14, 2014, Sibenik, as Executor, filed a first and final account of the Estate; the account listed disbursements for charges and claims, but did not provide for any payment to Leonardo. On April 21, 2014, Leonardo

filed verified objections to the account.[2]  She alleged that she "was engaged by the named Executor pursuant to a fee letter signed on 2/18/13" and that she "performed extensive legal services in connection with the estate administration and further incurred expenses, for [a] total claim for legal services and costs in the amount of $29,256.94."  Objs. to First & Final Account, 4/21/14, at 1-2 ¶¶ 5-6.  She alleged that the legal services she provided qualified as an expense of administration that should have been paid before other creditors under Section 3392 of the Probate, Estates and Fiduciaries ("PEF") Code.  Id. at 3 ¶ 12(c)-(d).[3]

_____

[2] Leonardo's objections were filed by her counsel, but she verified them pursuant to Section 4904 of the Crimes Code, 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

[3] Section 3392 provides:

> If the applicable assets of the estate are insufficient to pay all proper charges and claims in full, the personal representative, subject to any preference given by law to claims due the United States, shall pay them in the following order, without priority as between claims of the same class:

> (1)  The costs of administration.

> (2)  The family exemption.

> (3)  The costs of the decedent's funeral and burial, and the costs of medicines furnished to him within six months of his death, of medical or nursing services performed for him within that time, of hospital services including maintenance provided him within that time, of services provided under the medical assistance program provided within that time and of services performed for him by any of his employees within that time.

> (4)  The cost of a gravemarker.

> (5)  Rents for the occupancy of the decedent's residence for six months immediately prior to his death.

(Footnote Continued Next Page)

At the suggestion of Leonardo's counsel, the parties mediated their dispute and agreed to a resolution. See N.T., 3/29/16, at 3 (representation by Leonardo's counsel regarding mediation). On October 6, 2014, Leonardo filed a motion to withdraw her claim. The motion stated, "The parties have entered into an agreement to settle the Claim for the amount of $16,000." Motion To Withdraw Claim, 10/6/14, at 2 ¶ 4. It continued, "As this matter is now settled, the Claimant seeks to withdraw the Claim." Id. at ¶ 5. The motion noted that both sides consented to the withdrawal. Id. at ¶ 6. On October 8, 2014, the Orphans' Court entered an order that stated: "upon consideration of Objector/Claimant's Motion to Withdraw Claim, IT IS ORDERED that the Claim filed by G. Leonardo, Esq. is hereby withdrawn with prejudice." Order, 10/8/14. On October 10, 2014, $16,000 was wired to Leonardo's bank account. On December 13, 2014, Sibenik, as Executor, filed a status report with the court stating that administration of the Estate was complete.

On December 22, 2015, Leonardo filed a complaint against Sibenik in the Circuit Court of Broward County, Florida ("Broward County Complaint").[4] In it, Leonardo alleged that Sibenik had entered into an agreement for legal

(Footnote Continued) —————————————

> (5.1) Claims by the Commonwealth and the political subdivisions of the Commonwealth.
>
> (6) All other claims.

20 Pa. C.S. § 3392.

[4] Law Office of Giselle Leonardo, P.A. v. Sibenik, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Docket No. CACE-15-022792.

- 4 -

services and she had sent him invoices for the work performed. The complaint attached a copy of the June 18, 2013 invoice for $29,256.94 and alleged, "No objections were made to these monthly invoices." Broward County Complaint, 12/22/15, at 2 ¶¶ 7-8 & Ex. B. The complaint also attached a second invoice, dated August 18, 2013, that also was for $29,256.94 and repeated, "No objection was made by Defendant to the invoices." Id. at 2-3 ¶ 9 & Ex. C. The complaint then alleged:

> On or about October 15, 2014, payment in the amount of $16,000 was made to [Leonardo] from collateral sources. It was applied to attorney's fees, costs and interest and to the principal balance owed under the invoices. This left an amount remaining due and owing from the June 2013 invoice in the amount of $20,397.22.

Id. at 3 ¶ 10. The complaint pled four counts against Sibenik, for breach of contract, quantum meruit, an open account, and an account stated; each sought "$20,397.22 plus costs, interest and attorney's fees." Id. at 3-6 ¶¶ 12-34.[5]

On February 23, 2016, Sibenik petitioned for a "Rule To Show Cause Why a Settlement and Compromise Should Not Be Enforced." The petition alleged:

> 14.    The monetary claim asserted by Ms. Leonardo in Florida is for the same fees and expenses asserted in her Claim and Objection in this estate.

_____

[5] The complaint does not explain how Leonardo calculated an amount due of $20,397.22, when the claim supposedly was for the balance remaining on a claim of $29,256.94 minus a $16,000 payment. A fifth count of the complaint sought to reform a provision of the Retainer Agreement that called for attorneys' fees to "be paid by the prevailing party," rather than by the non-prevailing party.

15.  Ms. Leonardo acknowledges in her Complaint the receipt of the $16,000.00 payment which settled her Claim but instead of representing it for what it was, i.e. a payment in satisfaction of her claim for legal fees and expenses, she states it was merely a payment "from collateral sources." . . .

16.  Ms. Leonardo settled and compromised her claim and is barred from pursuing any further legal action.

Pet. for Rule to Show Cause Why a Settlement & Compromise Should Not Be Enforced, 2/23/16, at ¶¶ 14-16.  On February 24, 2016, the Orphans' Court issued a rule that was returnable on March 29, 2016.

On March 24, 2016, Leonardo filed a "Preliminary Objection/Reply to Petition for Rule To Show Cause."  She claimed that Sibenik's petition was "essentially a Preliminary Objection or a New Matter defense" to the Broward County Complaint that should be filed in that Florida action.  With respect to enforcement of the settlement, Leonardo averred:  "The petition for Rule to Show Cause seeks enforcement of a settlement; however, all terms and conditions of the Allegheny County settlement have in fact been concluded. The payment was made in full and the claim against the Estate was withdrawn.  There is nothing to enforce in Allegheny County."  Prelim. Obj./Reply to Pet. for Rule to Show Cause Why the Settlement Should Not Be Enforced, 3/24/16, at 1 ¶ 2.  Leonardo asserted that because no settlement agreement was incorporated into the final judgment in the Estate matter, the Orphans' Court lacked subject matter jurisdiction to proceed further.  Id. at 2 ¶ 3.  She noted that she filed the Broward County

Complaint against Sibenik personally, not the Estate, id. at ¶¶ 4, 6, and added:

> The Broward County Complaint is for legal services rendered to Mr. Sibenik, the individual, and not as Executor of his father's estate. The Fee Agreement was signed by Giselle Leonardo, P.A. and Thomas Sibenik, in his individual capacity and not as Executor, and includes a provision for venue in Broward County, FL. The Complaint is for services from January to June 2013, prior to the appointment of an Executor.

Id. at ¶ 5. Leonardo stated that her "Objections to the Estate Account . . . were specifically in reference to 'extensive legal services in connection with estate administration' only" and that "[t]here was no global settlement of all claims." Id. at 3 ¶ 8.

In response to these filings, on April 29, 2016, the Orphans' Court entered an order clarifying its October 8, 2014 order approving the withdrawal of Leonardo's claim against the estate. The order stated:

> [I]t is hereby ORDERED and DECREED that the court's Order of October 8, 2014 be and is hereby clarified as follows:
>
> The court's Order dismissed with prejudice the claim of Attorney Leonardo against the estate and Thomas L. Sibenik, individually, and in his capacity as Executor of the Estate, for legal fees and expenses in the amount of $29,256.94 claimed by Attorney Leonardo on the basis of a fee letter signed by Thomas L. Sibenik on February 18, 2013 and the invoice of Attorney Leonardo in the amount of $29,256.94.

The order included findings that summarized what had occurred in the case up to the settlement. It also referenced Section 3331 of the PEF Code,

which states that an executor does not have personal liability on any contract made as an executor or other personal representative of an estate.[6]

On May 23, 2016, Leonardo filed a timely appeal that raises the following issues:

[1.] Does a court have jurisdiction to make substantive changes to a final order more than thirty days after the order was signed, when neither exceptions nor an appeal were filed?

[2.] May a court substantially modify a final order which results from a compromise between the parties absent any allegations of ambiguity, fraud or mistake in the order and without any due process procedure?

[3.] May a court substantially modify a final order for the benefit of a non-party more than eighteen months after the order was signed and without any due process procedure?

[4.] May a court enter a final order granting the substantive relief requested by a party before the court has disposed of pending preliminary objections?

Leonardo's Brief at 6 (issues reordered).[7]

_____

[6] Section 3331 of the Code, 20 Pa. C.S. § 3331, provides:

Unless he expressly contracts otherwise, in writing, a personal representative shall not be personally liable on any written contract which is within his authority as personal representative and discloses that he is contracting as personal representative of a named estate. Any action on such a contract shall be brought against the personal representative in his fiduciary capacity only, or against his successor in such capacity, and execution upon any judgment obtained therein shall be had only against property of the estate.

Nothing in the Retainer Agreement made Sibenik personally liable for payment of any claim against the Estate.

[7] The Sibenik Estate has filed a responsive brief as appellee, but it fails to comply with the Rules of Appellate Procedure, which require all documents,
(Footnote Continued Next Page)

Leonardo contends that the Orphans' Court lacked authority to "make substantive changes" or to "substantially modify" its October 8, 2014 order. "To the degree the issue of whether the law has been misapplied involves a purely legal question, it is reviewed de novo." In re Fiedler, 132 A.3d 1010, 1025 (Pa. Super.) (en banc), appeal denied, 145 A.3d 166 (Pa. 2016). Upon careful review, we conclude that the Orphans' Court did not err.

The controlling fact in this case is that Leonardo appeared before the Allegheny County Orphans' Court and represented to that court that the Sibenik Estate owed her $29,256.94 for legal services relating to estate administration. There was no ambiguity in her representation. She filed a claim for $29,256.94, and in objections to the Estate's final account she alleged that she "was engaged by the named Executor pursuant to a fee letter," she "performed extensive legal services in connection with the estate administration," her work qualified as an administrative expense of the Estate, and the cost of her legal services for the Estate was $29,256.94. Objs. to First & Final Account, 4/21/14, at 1-3 ¶¶ 5-6, 12(c)-(d). The Estate dealt with her claim on that basis, negotiated it, and settled it for $16,000

(Footnote Continued) —————————————
including briefs, to be double-spaced and to use type no smaller than 12-point. Pa.R.A.P. 124(a)(3), (4). Compliance with these requirements is mandatory; Rule 124(a)(3) uses the word "must," and Rule 124(a)(4) uses "shall." The Estate's brief complies with neither requirement. In an appropriate case, a nonconforming brief may be suppressed. Pa.R.A.P. 2101. We admonish counsel for the Estate for failing to comply with our rules.

under the auspices of the Orphans' Court, which approved Leonardo's withdrawal of her claim upon receiving her representation of the settlement.

Now, Leonardo seeks to backtrack. She says the $29,256.94 does not relate entirely to work for the Estate, and in fact she claims that most of that amount ($20,397.22, according to her pleading in Florida) was incurred performing personal legal services for Sibenik. That claim is directly contrary to what she represented to the Orphans' Court. The claim also is belied by a cursory review of her invoice, the specific entries on which relate to estate matters.[8]

Leonardo also says that Sibenik, not the Estate, is personally liable for her fees because she entered into the Retainer Agreement with him before he was appointed Executor of his Father's Estate. Again, that is directly contrary to what she represented to the Orphans' Court, when she stated that she "was engaged by the named Executor pursuant to a fee letter" and "performed extensive legal services in connection with the estate administration." It is true that Sibenik had not yet been appointed as Executor when he signed the Agreement on February 18, 2013 (or, indeed, by the time he fired Leonardo in June 2013). However, according to the

_____

[8] There are a few references in the invoice to real estate and other matters, but it is unclear whether these relate to personal matters of Sibenik or whether they deal with, for example, real estate that was part of the Estate. When the Orphans' Court looked at the invoice, it said: "I don't see anything really other than the estate. I don't." N.T., 3/29/16, at 13. We again note that, when Leonardo filed her claim against the Estate and her objections to the Estate account, she represented that the full $29,256.94 was incurred for estate administration work.

entries on Leonardo's invoice, she worked on estate administration during that time in consultation with Sibenik, and her filings with the Orphans' Court show that she elected to treat that work as work for the Estate without awaiting Sibenik's formal appointment as Executor. Her filings induced Sibenik, as Executor, to settle her claim on behalf of the Estate. Leonardo is now estopped from claiming that she really was working for Sibenik in some other capacity, especially since her dealings with Sibenik as the Estate's Executor meant that, under Section 3331 of the PEF Code, he could not be held individually liable for the claim filed against the Estate.[9]

In her brief, Leonardo seeks to brush aside the implications of her filings against the Estate as an "academic question" and to blame Sibenik because he "could have (maybe should have?) objected strenuously to" her claim against the Estate. Appellant's Brief at 27-28 n.5. During oral argument before this Court on May 9, 2017, her counsel justified her actions by stating, "My client is entitled to overreach."

We disagree. Lawyers are officers of the Court. We accept their factual representations because they occupy that position of trust. See

---

[9] See In re Estate of Bullotta, 838 A.2d 594, 596 (Pa. 2003) ("As a general rule, a party is estopped from assuming a position inconsistent with his or her assertion in a previous action, if the party is successful in maintaining that action"; "[t]he purpose of the doctrine is to protect the integrity of the courts by preventing litigants from 'playing fast and loose' with the judicial system by switching positions as required by the moment" (citations and internal quotation marks omitted)); In re S.A.J., 838 A.2d 616, 621 (Pa. 2003) ("the purpose of judicial estoppel is to uphold the integrity of the courts by preventing parties from abusing the judicial process by changing positions as the moment requires" (citations and internal quotation marks omitted)).

Berg v. Nationwide Mut. Ins. Co., 6 A.3d 1002, 1004 n.5 (Pa. 2010). We hold lawyers to a duty of candor. See Pa. R. Prof. Resp. 3.3, 204 Pa. Code § 81.4 R. 3.3; Pa. Code of Civility, Art. II ¶ 8, 204 Pa. Code § 99.3(8). Leonardo's representations to the Orphans' Court were made by her counsel on behalf of Leonardo personally, and not by Leonardo in her role as an advocate for an outside client; but we do not believe that this status excused Leonardo from a duty of candor to the Orphans' Court. Her representations, which were verified pursuant to the Crimes Code provision relating to unsworn falsification to authorities, concerned her fees and services as an attorney acting on behalf of a client, and they supported a claim for payment from an estate that was subject to approval by the Orphans' Court (see 20 Pa. C.S. § 3514). Though Leonardo, like every other litigant, had every right to take good faith positions in litigation, she could not "overreach" by reneging on her representations to that court.

The Orphans' Court's April 29, 2016, order must be viewed in this context. After filing a claim against the Estate for $29,256.94 and then settling it for $16,000, Leonardo sought in Florida to portray the settlement payment as merely funds from a "collateral source" and to characterize her Retainer Agreement as a contract by Sibenik for personal legal services under which he ran up fees of $29,256.94 and then never objected to her bill. The Orphans' Court acted within its authority by assuring that its October 8, 2014 order approving withdrawal of Leonardo's claim against the Estate in light of the settlement could not be mischaracterized in that way.

Accordingly, it entered the April 29, 2016, order to clarify what had happened.

The Orphans' Court did not act outside its jurisdiction. In arguing to the contrary, Leonardo relies on a Judicial Code provision, 42 Pa.C.S. § 5505, which states: "Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." Leonardo insists that the Orphans' Court had no jurisdiction to enter the April 29, 2016 order because it did so more than thirty days after entry of the October 8, 2014, order. However, the April 29, 2016 order did not "modify or rescind" anything in the October 8, 2014 order; instead, the 2016 order merely clarified the 2014 order. A court retains such clarification authority under Section 5505. See Retanauer v. Flaherty, 642 A.2d 587, 590 (Pa. Cmwlth. 1994), appeal denied, 668 A.2d 1135 (Pa. 1995).[10]

Moreover, an Orphans' Court retains broad equitable powers regarding an estate, even after final distributions have been made. See Horner v. First Pa. Banking & Trust Co., 194 A.2d 335, 339 (Pa. 1963) ("powers of the Orphans' Court did not terminate upon final distribution"). We have long recognized that Orphans' Courts have the inherent power to review their

_____

[10] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." Mariner Chestnut Partners, L.P. v. Lenfest, 152 A.3d 265, 283 n.12 (Pa. Super. 2016) (citation omitted).

decrees and that this power should be "liberally exercised." Estate of Turnbull, 88 Pa. Super. 482, 494 (1926). Section 3521 of the PEF Code codifies a specific power of review that may be exercised up to five years after final confirmation of an account if a new matter has arisen.[11] Leonardo's recharacterization of her $29,256.94 fee claim in the Broward County Complaint was a new matter that arose after confirmation of the Estate account. Although Sibenik did not file a formal petition for review under Section 3521, we conclude that the Orphans' Court had inherent power and discretion to clarify the orders it had entered in this case in light of that new matter.

As there was only a clarification of the October 8, 2014 order, Leonardo also is not entitled to relief on her second and third issues, each of

_____

[11] Section 3521 reads:

> If any party in interest shall, within five years after the final confirmation of any account of a personal representative, file a petition to review any part of the account or of an auditor's report, or of the adjudication, or of any decree of distribution, setting forth specifically alleged errors therein, the court shall give such relief as equity and justice shall require: Provided, That no such review shall impose liability on the personal representative as to any property which was distributed by him in accordance with a decree of court before the filing of the petition. The court or master considering the petition may include in his adjudication or report, findings of fact and of law as to the entire controversy, in pursuance of which a final order may be made.

20 Pa. C.S. § 3521. We have held that this provision authorizes action by the Orphans' Court if, for example, "new matter has arisen since the confirmation of the account or decree" or "justice and equity require a review and no person will suffer thereby." In re Jones, 660 A.2d 76, 80 (Pa. Super. 1995), appeal denied, 673 A.2d 335 (Pa. 1996).

which presumes that the October 8 order was substantively modified. The October 8 order said that Leonardo's $29,256.94 claim was "withdrawn with prejudice." The April 29, 2016 order said that it was "dismissed with prejudice." The court said that it planned to sign the latter order as "confirming that . . . this order is the final order . . . for purposes of resolution of this matter." N.T., 3/29/16, at 8. It included findings summarizing the record so that, "if a Court wants to look behind what happened here, that is information provided to the Court." N.T., 4/29/16, at 8. In a later opinion, the Orphans' Court explained:

> Acting upon the motion to enforce settlement[,] the court order of [] April 29, 2016 was to clarify what the parties' intentions were when they satisfied and withdrew the claim in its entirety. Absent reservations of record, the [trial] court treated the settlement of the claim as a total satisfaction and not pro tanto.

Orphans' Ct. Op. at 2. Thus, the April 29, 2016 order merely clarified the nature and scope of Leonardo's claim in the Orphans' Court.

Leonardo's final issue is a procedural one. She contends that the Orphans' Court's "entry of the April 29, 2016 order without ruling on the pending preliminary objections was an abuse of discretion and error of law." Leonardo's Brief at 22. We disagree.

Leonardo responded to the Estate's petition with a hybrid document it called "Preliminary Objection/Reply to Petition for Rule To Show Cause." The Orphans' Court considered the substance of that pleading and then granted the Estate's requested relief. As the Orphans' Court Rules make no provision for how to address a "Preliminary Objection/Reply," we see no

error in the Orphans' Court's disposition. In effect, Leonardo elected to file a preliminary objection and a reply to the Estate's petition simultaneously, and the Orphans' Court therefore disposed of both simultaneously as well. As the court later pointed out, "While an independent order was not entered[,] it should be apparent that the preliminary objections were overruled by the substance of the April 29, 2016 Order." Orphans' Ct. Op. at 2. As we have discussed, we find no error in the Orphans' Court's resolution of the substantive issues raised by Leonardo in her pleading. Accordingly, Leonardo's final issue is without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/2017