Burger Estate.

Argued March 16, 1966; decided May 24, 1966; reargument granted November 8, 1966; reargued November 30, 1966. Before BELL, C. J., MUSMANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Walter M. Newman*, with him *Roland Fleer*, for appellant.

*Robert A. Jarvis*, with him *Beck, McGinnis & Jarvis*, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 18, 1967:

Louis Burger, a resident of the City of Pittsburgh, Allegheny County, died on November 5, 1963, survived by his widow, Frances Burger; a grandchild, Felice E. Walsh; his brother, Max Burger, the appellant; and two sisters, Rose Mosher and Lillie Sonnenblick.

On September 3, 1964, approximately 10 months after the death of her husband, Mrs. Burger, decedent's widow, elected to take against the will. Notice of her election was given to appellant and the other legatees. Early in January of 1964, appellant and the two sisters, who are all residents of New York, retained New York counsel to represent them, but neither they nor the counsel they retained in New York retained local counsel in Pittsburgh. There was some correspondence between the executor and New York counsel. The executor did include a suggestion that Pittsburgh counsel be retained and did notify the legatees that the Final Account was filed on November 24, 1964, and

that the audit would be held by the Orphans' Court on January 18, 1965, or as soon thereafter as the court would reach the same on the audit list.

The decree of the auditing Judge contained the following Schedule of Distribution:

"Balance for distribution                 $69,096.35

"Amount suspended in hands of Accountant to Dec. 1, 1965 for Fed. Estate Tax Audit             3,000.00

"To: Frances Burger, widow, per election to take against the will, filed 1/2 balance, viz:

| | | |
|---|---:|---:|
| Cash advanced | 1,750.00 | |
| Tr. Inh. Tax paid @ 2% | 633.33 | |
| Cash balance due | 30,664.85 | 33,048.18 |

"To: Felice E. Lucas, grand-daughter, 1/4 balance, viz:

| | | |
|---|---:|---:|
| Tr. Inh. Tax paid @ 2% | 316.67 | |
| Cash | 16,207.42 | 16,524.09 |

"To: Commonwealth of Pa., Tr. Inh. Tax due @ 15%             2,470.11

"To: Rose Mosher, sister 1/12th balance             4,684.66

"To: Lillie Sonnenblick, sister 1/12th balance             4,684.66

"To: Max Burger, brother, 1/12 balance             4,684.65

                                      $69,096.35"

A copy was sent to the New York petitioners. On February 9th or 10th, appellant was informed at the office of his New York counsel of the distribution decreed by the auditing judge and the amount of decedent's estate decreed to the petitioners. Appellant had expected a greater share and refused to sign the distribution receipt for his share and discharged his New York counsel. However, the executor was not informed of their dissatisfaction, nor did they file exceptions thereto.

The first knowledge of dissatisfaction by the executor was when he was served with a copy of petition for review, which had been filed on April 7, 1965, two months and 10 days after the decree of distribution, and 7 days after decedent's granddaughter had cashed her distribution check. This petition was denied by the court en banc, one judge dissenting, and this appeal followed.

We agree with the conclusion reached by the lower court that in the absence of proof of fraud, and distribution of the decedent's estate having been made by the executor in accordance with the decree of the court, §721 of the Fiduciaries Act is controlling, and we agree that the court below does not have the power to grant the review. See *Thomas Estate*, 397 Pa. 403, 155 A. 2d 816 (1959).

Appellant contends that the fact that distribution was made before the petition for review was filed does not bar review of the decree of distribution. Appellant indicates that he was lulled into believing that his portion would be far greater than what he received, and that the executor should have informed him as to his recommended distribution. With this contention we cannot agree. A careful review of the record has failed to reveal any evidence of fraud, either actual or constructive, on the part of the executor. The court below reached the same opinion, stating:

"The correspondence between the executor's counsel and the petitioners and their New York counsel, ... demonstrates beyond cavil that the decedent's executor, by his counsel fully, accurately, and truthfully informed the petitioners and their New York counsel as to all matters pertaining to the administration of the decedent's estate, and gave them all notices required by statute and Court Rule. Copies of the decedent's will, the inventory and appraisement, and the executor's account were sent to and received by the petition-

ers and their New York counsel. They were notified of the decedent's widow's election to take against his will, and a copy of the Pennsylvania Statute pertaining to the right of the widow to elect to take against the will was sent to and received by the petitioners' New York counsel."

We also find to be without merit appellant's contention that the decree of distribution is void by reason of the executor's failure to notify him of his intention to seek an intestate distribution, or that a disputable question would arise. As the decedent's widow had elected to take against the will, the burden of determining the effect of this election on the will was on the auditing judge and it was his duty to enter a decree of distribution in accordance with his determination. The executor had no duty to submit any proposed distribution, and if he did so, he did not relieve the orphans' court judge of his burden. As stated by the court below: "Since the executor's inclusion of a suggested distribution in his petition for distribution was not required and was surplusage, and was not, therefore, binding on the petitioners or the auditing Judge, and the petitioners knew that the auditing Judge would be required to determine the effect of the widow's election on the provisions of the decedent's will, the failure of the executor to notify the petitioners that the so-called 'Statement of Proposed Distribution' would be included in the petition for distribution which would be filed at the audit of his account, did not violate the statutes of the Commonwealth of Pennsylvania, the Orphans' Court Rules of the Supreme Court, or the Rules of this Court."

We agree with appellant's contention that the orphans' court is inherently endowed with all the powers of a court of equity, yet the power has been limited by the legislature when it enacted §721 of the Fiduciaries Act of 1949, as amended, 20 P.S. 320.721, reading as

follows: "Rehearing; relief granted. If any party in interest shall, within five years after the final confirmation of any account of a personal representative, file a petition to review any part of the account, or of an auditor's report, or of the adjudication or of any decree of distribution, setting forth specifically alleged errors therein, the court shall give such relief as equity and justice shall require: *Provided, That this section shall not authorize review as to any property distributed by the personal representative in accordance with a decree of court before the filing of the petition.* The court or master considering the petition may include in his adjudication or report, findings of fact and of law as to the entire controversy, in pursuance of which a final order may be made. 1949, April 18, P. L. 512, art. VII, §721." (Emphasis supplied)

The purpose of the proviso of this act was to provide finality to a distribution made with authority of a decree of court and to prevent effective challenge to such distributions which were made prior to the petition for review. To hold otherwise would open a virtual Pandora's Box to a never ending amount of litigation by disappointed legatees and would create undue delay and unnecessary uncertainty in the orderly administration of decedents' estates.

Decree affirmed. Costs to be borne by appellant.

Mr. Justice EAGEN concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

President Judge BOYLE of the Orphans' Court of Allegheny County, in dissent, in the court below well stated: "The record is barren of any actual notice, in any form, given to the sisters and brother of the decedent that there was a question of law involved in the proposed distribution which, if determined adversely, would reduce their distributive share by one-half. This

failure to give actual notice and an opportunity to be heard was in violation of the fundamental right of the petitioners to due process of law: Galli's Estate, 340 Pa. 561, 569-570. It was also in violation of the immemorial practice in the Orphans' Court of Allegheny County which requires that actual notice of questions of law affecting distribution be given to the parties involved so that they may have an opportunity to be heard and to be represented by counsel. On this point it should be noted that on January 5, 1965, thirteen days before the audit on January 18, the representatives of the estate advised New York counsel for the sisters and brother of the decedent by letter (Exhibit F) which in part is as follows: 'As you undoubtedly know, there is no requirement that you or your clients appear at the audit in order to participate in the distribution in this estate unless questions are raised which require judicial determination.'

"This advice in Exhibit F was misleading. Section 13 of local Rule 3 governing practice in the subjects of *Accounts, Audits* and *Distribution* in the Orphans' Court of Allegheny County provides:

'Attendance at Audits. Sec. 13. Accountants, claimants, and all other persons interested must attend audits at the time fixed therefor and furnish such information and produce such evidence as may be necessary to make proper disposition of exceptions, objections, and distribution.'

"The stark fact is that the audit in the case at bar did involve a very substantial question of law which was resolved against the petitioners for review by the executor by his mere averment in item 12 on page 4, supra, of the Petition for Distribution that there was a partial intestacy. The effect of this was to cut in half what otherwise would have been the distributive share of the brother and sisters of the decedent. Yet this question of distribution was not brought to the

attention of the Court and no actual notice of the question was given to the parties affected.

"The executor and his counsel acted in good faith but their omission in failing to give proper notice to the brother and sisters of decedent and in failing to properly inform the auditing judge of the important question of law to be determined by the Court constituted error which is sufficient to void the decree of distribution.

"The failure of the executor to bring the question of law to the attention of the Court denied the auditing judge the opportunity to see to it that the parties received actual notice of the question of distribution involved." I fully agree with President Judge BOYLE.

Moreover, Section 6, Rule 3 of the Orphans' Court Rules of this Court provides that no account shall be confirmed in the absence of written notice of the filing of the account and the call thereof for audit or confirmation to every person of whom the accountant has notice or knowledge who claims an interest in the estate. In my opinion, the instant record fails to reveal a substantial compliance with Section 6, Rule 3, and I thoroughly agree with President Judge BOYLE that the appellant did not have his "day in court, after due notice".

In *Shugars's Estate*, 312 Pa. 472, 476-477, 167 A. 567 (1933) this Court said: ". . . because of the failure to give the actual notice required by statute, the decree ordering distribution was void as to appellant's claim. It could have no possible effect upon it. Such notice was indispensably necessary to give jurisdiction, and without such notice and an opportunity to appellant to be heard, the decrees of the court were absolutely void: [citing an authority]." Moreover, the rationale of *Galli's Estate*, 340 Pa. 561, 17 A. 2d 899 (1941) commands reversal of the instant decree.

Even if the correspondence between counsel for the personal representative and counsel—not of record in the proceedings—for appellant be construed as notice, such notice fell far short of the standard of *requisite* notice and was highly inadequate under the circumstances.

I dissent from the view taken by the majority of this court. I believe that the decision in this case will constitute an unfortunate precedent in our case law and that it emasculates the requirements of adequate notice which is consonant with due process. I would reverse the decree in the court below.