## Bach Estate.

Argued April 26, 1967. Before BELL, C. J., MUS-MANNO, EAGEN, O'BRIEN and ROBERTS, JJ.

*Frederick D. Sarkis,* with him *Stassen, Kephart, Sarkis & Kostos,* for appellants.

*Cuthbert H. Latta,* with him *O. Warren Higgins, Morgan R. Jones,* and *Drinker, Biddle & Reath,* for appellees.

*William H. S. Wells,* with him *Saul, Ewing, Remick & Saul,* for appellee.

352

OPINION BY MR. CHIEF JUSTICE BELL, June 30, 1967:

Charles T. Bach died, testate, on May 3, 1955. On May 23, 1956, the Orphans' Court filed an Adjudication confirming the executors' account and approving the Settlement Agreement dated September 19, 1955 which was made by the appellants and the Drexel Institute and will be hereinafter referred to in detail. Shortly thereafter, the estate was distributed in accordance with the Adjudication and the Settlement Agreement.

Approximately 10 years later, four of Bach's testamentary beneficiaries (the appellants) petitioned the Orphans' Court to review its Adjudication and prior Decrees and (a) set them aside because of fraud, and (b) award to the petitioners that part of the residuary estate which the testator had contingently bequeathed to them. The Orphans' Court sustained respondents' preliminary objections and dismissed the petition. From this Decree the four contingent beneficiaries took this appeal.

Bach first bequeathed a number of legacies, including a pecuniary legacy to each of the appellants. He then created a trust of his residuary estate, naming the Pennsylvania Company for Banking and Trusts, his wife Mrs. Bach, and his friend Melvin C. Webb, as trustees. In this residuary trust, he gave his wife, Ruth, the income for life, and also directed the trustees to pay her annually the sum of $7,500 out of net income if the net income was sufficient, or if the net income in any year did not amount to $7,500, to pay her $7,500 out of income and principal. The trustees were also given power to appropriate and expend principal in their discretion for the benefit of his widow in the event of her illness. Bach then provided that, at Mrs. Bach's death—Mrs. Bach is still living and was named as a respondent in this proceeding—*the remaining remainder of the trust* was to be divided into three equal parts: One-third of the principal was to be paid to

Bach's niece, Helen K. Gledhill if then living; one-third to his nephew Elwood S. Kille if then living, or if then deceased, to his wife if then living; and one-third to Bach's nephew Charles T. Weidner if then living, or if then deceased, to Mrs. Weidner if then living. Bach further provided that (a) if the beneficiaries of any one-third share should die before Mrs. Bach, that share should accrue to the other share or shares, and (b) if none of the five named beneficiaries survived Mrs. Bach, the entire principal should be paid to Drexel Institute of Technology.

Thereafter, Webb suggested to Mrs. Bach and to Charles J. Biddle, Esq.—a distinguished member of the Philadelphia Bar who was counsel for the Drexel Institute and later represented Mrs. Bach—that the will did not carry out Bach's ideas or wishes or intentions with respect to Drexel Institute, which Webb said Bach had told him he wished to substantially benefit after Mrs. Bach's death. Thereafter, Biddle, with the approval of Mrs. Bach, had conferences with Miss Gledhill and Mr. and Mrs. Kille concerning a possible settlement of the estate, and correspondence with Mr. and Mrs. Weidner concerning a proposed settlement under which Miss Gledhill, the Killes and the Weidners would each receive $30,000 and Drexel Institute would receive the balance of the principal of the residuary estate. Biddle told all the residuary beneficiaries as well as Mrs. Bach that if she (Mrs. Bach) took against the will, there was some doubt or uncertainty in the law as to whether the bequests to the present appellants would be accelerated or whether they could or could not receive their share of the principal until after Mrs. Bach's death. With all these facts well known, all the parties (except Mrs. Bach) entered into and executed a Settlement Agreement.

This Settlement Agreement, dated September 19, 1955, pertinently provided:

354

"WHEREAS, Ruth Matlack Bach, the wife of Charles T. Bach, has indicated that she may take against the Will of said Charles T. Bach.

"WHEREAS, in the event Ruth Matlack Bach takes against the Will of Charles T. Bach the parties hereto are in disagreement as to the proper distribution of the balance of the estate, it being the position of the individual parties hereto that they would take the entire remaining balance of the estate, whereas Drexel Institute of Technology takes the position that under the law of Pennsylvania Drexel Institute of Technology would be entitled to a substantial part or all of the balance of said principal.

"WHEREAS, the parties hereto desire to avoid any litigation and to settle any differences which might arise among them *in the event* Ruth Matlack Bach takes against the Will of her husband.

"NOW THEREFORE, THE PARTIES HERETO, . . . agree that *if Ruth Matlack Bach effectively elects to take against the Will of her husband,** Charles T. Bach, deceased, then the balance of the estate of Charles T. Bach after paying the share of Ruth Matlack Bach shall be distributed in accordance with the following agreement: . . ."

*This Agreement,* which was signed by Miss Gledhill, the Killes, the Weidners and the Drexel Institute, *was conditioned upon Mrs. Bach's election to take against her husband's will*—a very important fact which appellants have ignored—which would result in giving Drexel Institute a large amount of money, none of which it might otherwise have received.

Because of petitioners' allegations of fraud, it is necessary to recite additional facts.

At the time of testator's death, his wife Ruth was 52 years of age; Miss Gledhill was 65 years of age; the

---

* Italics throughout, ours.

two Weidners were respectively 62 and 61 years of age; and the Killes were respectively 68 and 59 years of age. It was obvious to everyone that none of them might live to enjoy any of the income from the residuary estate which had a net value of $765,000 before taxes and expenses. It was likewise obvious that if any or all of them survived Mrs. Bach, they might be too old to enjoy the income even if they lived to get it.

One month after the aforesaid Settlement Agreement was signed, Mrs. Bach elected to take against her husband's will, thereby making the said Settlement Agreement immediately effective.

The Orphans' Court sur the executors' account, approved this Settlement Agreement, and *distribution was made in accordance with the Adjudication and Decree of the Orphans' Court* in 1956. *Under the Court's Decree,* Miss Gledhill *received in distribution* $30,000, Mr. and Mrs. Kille received $30,000, and Mr. and Mrs. Weidner received $30,000; and Drexel Institute received the balance, viz., $186,199. This was 10 years before the present petition for review was filed in the Orphans' Court.

The petition for review named as respondents, testator's wife, Mrs. Bach, who was then and still is alive, the Pennsylvania Company, Drexel Institute, and Biddle. The charges set forth in the petition are many; the really important ones are the oft repeated allegations of fraud on the part of Biddle. Mrs. Bach is accused of ignorance and failure as executrix and trustee to carry out her husband's will and thus protect the petitioners. The Pennsylvania Company is accused of negligence in failing to protect the interests of the petitioners and carry out the provisions of testator's will, under which, by virtue of Mrs. Bach's election to take against the will, they would have received a far larger sum of money. Drexel Institute is accused by petitioners of taking advantage of the "na-

ivety" and "cupidity" of the petitioners themselves by securing for itself a very large amount of Bach's residuary estate without any right thereto under the will, together with a demand that the Institute give up its ill-gotten gains. Biddle's alleged fraud boils down in the last analysis, not to actual fraud, but to petitioners' conclusions of legal fraud (1) because of his alleged erroneous interpretation of the law governing the acceleration of the bequests to the petitioners if and when Bach's widow took against Bach's will, and (2) his (well-known) dual and (alleged) conflicting position as counsel for Mrs. Bach and for the Drexel Institute. Finally, appellants attempt to excuse (a) their laches and (b) their failure to present a petition for review within five years after the Court's Adjudication and Decree, as required by §721 of the Fiduciaries Act of 1949, P. L. 512, 20 P.S. §320.721. They attempt to excuse their delay by alleging that they only discovered Biddle's fraudulent conduct in 1964, and then only as a result of a tax decision by the U. S. Court of Appeals for the Third Circuit on June 30, 1964. That tax decision held, inter alia, that there would have been an acceleration of bequests to the petitioners after Mrs. Bach had taken against the will. Appellants further alleged that Mrs. Bach was defrauded by Biddle because he induced her to take against the will in order to benefit his client (Drexel Institute) by securing for it under the Settlement Agreement a very large amount of Bach's estate, to none of which it was entitled. With this contention, as well as with petitioners' other averments of fraudulent conduct, Mrs. Bach is in complete disagreement.

### Preliminary Objections

We have considered the averments in appellants' petition for review under "the well established rule

that preliminary objections (or pleadings in the nature thereof) admit as true *all facts* which are well and clearly pleaded, but not the pleader's conclusions or averments of law: [citing five cases]." *Stahl v. 1st Pa. Bank. & Trust Co.*, 411 Pa. 121, 126, 191 A. 2d 386. *Accord: Clark v. Allen*, 415 Pa. 484, 204 A. 2d 42, and cases cited therein; *Bechak v. Corak*, 414 Pa. 522, 201 A. 2d 213.

It is absolutely impossible to understand how Mrs. Bach could be held liable by petitioners or by anyone for her election to take against her husband's will, or for any thing or matter that was done by her in this case. Mrs. Bach was not even a party to the above-mentioned Settlement Agreement. It is likewise impossible to find any facts in the petition for review that would prove the Pennsylvania Company failed to exercise the reasonable care which is required of fiduciaries, or was negligent in the administration of this estate, or failed in any duty it had to protect the interests of the petitioners-appellants.

It is unnecessary to decide whether Biddle was correct in his statement to the petitioners that the law of Pennsylvania was uncertain with respect to an acceleration of their interests, if Mrs. Bach took against the will. Biddle was not representing the petitioners, and if they desired to know their rights, they were sui juris and could have employed their own attorney. In any event, there was certainly no actual fraud on the part of Biddle and none of the *facts* averred in appellants' petition for review were sufficient to show legal fraud by Biddle, even if we assume arguendo that legal fraud would justify a review 10 years after a confirmation of the aforesaid Settlement Agreement by the Orphans' Court *and an actual distribution pursuant thereto. Hamilton Estate*, 351 Pa. 419, 41 A. 2d 567; *Thomas Estate*, 397 Pa. 403, 155 A. 2d 816. See also, *Thorne's Estate*, 344 Pa. 503, 25 A. 2d 811.

We further note that there is neither law nor equity on appellants' side. If it were not for the above-mentioned Settlement Agreement by the appellants, which was predicated and conditioned upon Mrs. Bach's election to take against her husband's will, none of the present appellants would have received up to the present date and none of them might ever receive* any money whatsoever from Bach's residuary estate.

## The Fiduciaries Act

If there ever were any legal right or justice in appellants' petition for a review, it would have been defeated by §721 of the Fiduciaries Act of April 18, 1949, P. L. 512 §721, 20 P.S. §320.721. Section 721 provides: "If any party in interest shall, *within five years* after the final confirmation of any account of a personal representative, file a petition to review any part of the account, or of an auditor's report, or of the adjudication, or of any decree of distribution, setting forth specifically alleged errors therein, the court shall give *such relief as equity and justice* shall require: *Provided, That this section shall not authorize review as to any property distributed by the personal representative in accordance with a decree of court before the filing of the petition. . . .*"

Section 721 bars the grant of appellants' petition for review for each of the following reasons: (1) Appellants' petition for review was not filed within five years after (a) the final confirmation of the executor's account and of (b) the Court's approval of the Settlement Agreement and (c) an *actual distribution* of the residuary estate by the personal representatives

---

* Petitioners' actuarial chance of outliving Mrs. Bach would have varied from 21 per cent to 35 per cent, respectively, and Weidner has already died.

of the testator in accordance with the Court's Decree: *Thomas Estate,* 397 Pa., supra; (2) under all the facts and circumstances there is *neither equity nor justice in the relief they seek: Thorne's Estate,* 344 Pa. 503, 513-514, 25 A. 2d 811; *Kinter v. Commonwealth Trust Co.,* 274 Pa. 436, 118 Atl. 392; and (3) the lapse of ten years precludes a review except for actual or legal fraud, of which there was none: *Hamilton Estate,* 351 Pa., supra; *Thomas Estate,* 397 Pa., supra.

## Laches

There is still an additional reason why the Order of the lower Court must be affirmed, i.e., laches. Appellants blandly overlook the fact (1) that some or all of them in the absence of the above mentioned Settlement Agreement and of Mrs. Bach's election which was predicated thereon might never have received a penny of Bach's residuary estate, and (2) it is impossible in view of all the above mentioned facts, and especially Mrs. Bach's election to take against the will, to unscramble and disgorge the eggs they have cooked and eaten. Petitioners-appellants are undoubtedly barred by laches. *Grote Trust,* 390 Pa. 261, 135 A. 2d 383. In *Grote Trust,* the Court pertinently said (pages 269-270) : "Laches arises when a defendant's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him. Cf. Hammond v. Hopkins, 143 U.S. 224; Barnes and Tucker Co. v. Bird Coal Co., 334 Pa. 324, 5 A. 2d 146; 19 Am. Jur. §§498, 511; 30 C.J.S. §§112, 115, 119; Paull v. Paull, 384 Pa. 2, 119 A. 2d 93; First National Bank of Pittston v. Lytle Coal Co., 332 Pa. 394, 3 A. 2d 350."

For each and all of the aforesaid reasons—
Decree affirmed, appellants to pay costs.

Mr. Justice JONES and Mr. Justice COHEN took no part in the consideration or decision of this case.