**In re ESTATE OF Lydia ALEXANDER, a/k/a Lizzie Alexander, Deceased.**

**Appeals of St. Jude Children's Research Hospital, Children's Hospital Foundation, Alexander and Irina Okropiridze, James C. Bowen.**

Superior Court of Pennsylvania.

Argued March 22, 2000.

Filed July 27, 2000.

Spencer Ervin and Stanley A. Pelli, Philadelphia, for Okropiridze, appellants.

Curtis P. Cheyney, Philadelphia, for Bowen, appellant.

Neil J. Hamburg, Philadelphia, for St. Jude, appellant.

Before POPOVICH, TODD, and BROSKY, JJ.

TODD, J.:

¶ 1 In these consolidated appeals, we must determine whether the trial court properly ordered two hospitals, as contingent beneficiaries under a will, to return funds distributed to them so that such funds can be redistributed to the primary beneficiaries under the will – citizens of the Republic of Georgia – who now claim, over 10 years after the initial distribution, that the executor did not notify them of the bequest. For the reasons that follow, we affirm in part, reverse in part and remand for further proceedings consistent with the instructions contained herein.

¶ 2 Attorney James C. Bowen drafted the initial and subsequent versions of the will of Lydia A. Alexander of Perkasie, Pennsylvania. The relevant provision of the final will is the following:

> I will and direct that my Executor, hereinafter named, shall make every effort to contact my relatives in Russia, who would inherit my estate if I were to die intestate in the Commonwealth of Pennsylvania. Said heirs in Russia shall receive such share from my estate as defined by the intestate laws of Pennsylvania.
>
> If no heir can be determined within one (1) year from the date of my death, I will and direct that this devise to them shall lapse and I direct that all the rest and remainder of my estate shall be divided into three (3) equal shares and I give and devise one (1) of said shares unto each of the following:

A. Children's Hospital of Philadelphia.

B. St. Christopher's Hospital of Philadelphia.

C. St. Jude's Hospital in Memphis, Tennessee.

(Last Will and Testament of Lydia A. Alexander, dated May 23, 1984, at 1–2.) The will further provided that Bowen would serve as the executor. Alexander died on September 8, 1986 and her will was probated in Bucks County, with Bowen appointed as executor.

¶ 3 Bowen's efforts to locate the Russian heirs – an underlying focus in this case and the details of which we will discuss below – were fruitless. On January 4, 1988, one year after Alexander's death, Bowen filed a petition for adjudication, containing an account of his fruitless efforts to locate the Russian heirs, and recommending distribution to the three hospitals (the "Hospitals"). The Honorable Leonard B. Sokolove of the Court of Common Pleas, Orphans' Division, held a hearing and, on February 25, 1988, issued an adjudication stating that legal notice was provided and that the executor had made "necessary efforts to locate decedent's 'relatives in Russia', as directed in the Will. The court is satisfied from the documents presented that adequate effort to locate said relatives has been expended in accordance with the provisions of the Will." (Adjudication, 2/25/88, at 2.) Distribution to the Hospitals was ordered, and Bowen distributed the estate balance of approximately $120,000, to each in equal shares.

¶ 4 Irina Y. Okropiridze, as the personal representative of the estate of Yuri M. Okropiridze, and Alexander M. Okropiridze are citizens of the Republic of Georgia in the former Soviet Union (the "Heirs").[1] The Heirs are cousins of the decedent who, as her intestate heirs, were the primary beneficiaries under her will.[2]

---

1. Yuri M. Okropiridze, before his death in 1991, was also a citizen of the Republic of Georgia.

2. Alexander M. Okropiridze and Yuri M. Okropiridze are the sons of the decedent's first cousin, Valentina Okropiridze.

They first learned of Alexander's death in 1993 and therefore had no notice of the 1988 proceedings. In September 1994, counsel for the Heirs notified the Hospitals of their claims on the estate. In 1995, the Heirs brought a federal action against the Hospitals and Bowen which was dismissed.[3] Thereafter, in June 1996, they brought a petition in the Court of Common Pleas of Bucks County, directed to the Hospitals and Bowen, as executor, to show cause why the Orphans' Court adjudication dated February 25, 1988 should not be vacated, opened, and reviewed. The petition alleges that the Heirs had not properly been notified of their interests under the will and asked that the Hospitals disgorge their gifts from the Alexander estate to the court, with interest, to be redistributed to the Heirs. This petition began the present proceedings.

¶ 5 Judge Sokolove held a hearing on the petition on May 15, 1997 where he accepted a factual stipulation from counsel for the Heirs and the Hospitals, including documentation, as well as the testimony of Irina Okropiridze, Eleanor Adams, the Russian-language translator hired by Bowen to locate any heirs, and John C. Fisher, as an expert on finding heirs in Russia. Based on this evidence, the trial court was convinced that Bowen had previously misrepresented his efforts, that he did not, in fact, "make every effort to contact [Alexander's] relatives in Russia" as required in the will: in particular, that he failed to use relevant information available to him, and failed to follow appropriate procedures to notify the relatives. As a result, the court

concluded that the 1988 adjudication was void because of a lack of fundamental notice to the Heirs and, in November 1997, issued a *decree nisi* ordering the Hospitals to return the funds distributed to them in 1988, including interest from the date of the court's decree. The parties filed post-trial motions,[4] including a claim by the Heirs that Bowen be surcharged for any damage to them resulting from his failure to notify them. The court rejected the post-trial motions and issued a final decree on January 28, 1999, reaffirming its *decree nisi*, and refusing to surcharge Bowen without a "proper petition". A suggestion of bankruptcy was filed by St. Christopher's Hospital for Children before the final decree was issued by the court. Therefore, the final decree was not directed to St. Christopher's, and it is not a party to this appeal.

¶ 6 The Heirs, the Hospitals[5], and Bowen have each appealed from the final decree. The Heirs argue that interest should be assessed on the Hospitals' distribution from the time of the distribution in 1988, and that Bowen should be surcharged for any uncompensated damages incurred by the Heirs. The Hospitals argue that the petition for review of the 1988 adjudication is time-barred under 20 Pa. C.S. § 3521, absent fraud, that fraud has not been shown, and, if redistribution is affirmed, that the court's order regarding interest also should be affirmed. Bowen argues that the petition is time-barred, that the Heirs have no standing, that the prior federal court action bars relitigation

---

**3.** *Okropiridze v. St. Jude Children's Research Hospital*, No. 95–254, 1995 WL 339021 (E.D.Pa. June 1, 1995), *aff'd*, 85 F.3d 612 (3d Cir.1996). The complaint alleged that the Hospitals had deprived the Heirs of due process, and alleged claims against Bowen as scrivener of the will, and as executor of the estate. The claim against the Hospitals was dismissed because the hospitals were not state actors and the claim could not be read to allege a 42 U.S.C. § 1983 claim. The claims against Bowen were dismissed for failure to allege a malpractice action and because Bowen was held statutorily immune from liability

under 20 Pa.C.S. § 3521 for distributions made in accordance with a court order.

**4.** Although Bowen, as executor, had filed an answer and other papers with respect to the Heirs' petition, he filed a petition to intervene in this action, which was granted, and thereafter filed his own post-trial motions.

**5.** Children's Hospital of Philadelphia (The Children's Hospital Foundation) and St. Jude's Hospital in Memphis, Tennessee (St. Jude Children's Research Hospital).

of their claims, that the Heirs' petition is barred by laches, and that the claims against him are not properly before this Court and are barred by the statute of limitations.

■ ¶ 7 The findings of the trial court, as a chancellor in equity, will not be disturbed "absent manifest error; we may modify the decree only if the findings upon which the decree rests are unsupported by the evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence." *In re Jones*, 442 Pa.Super. 463, 660 A.2d 76, 79 (1995).

■ ¶ 8 The petition for review brought by the Heirs is governed by 20 Pa.C.S. § 3521, which provides:

**Rehearing; relief granted**

If any party in interest shall, within five years after the final confirmation of any account of a personal representative, file a petition to review any part of the account or of an auditor's report, or of the adjudication, or of any decree of distribution, setting forth specifically alleged errors therein, the court shall give such relief as equity and justice shall require: Provided, [t]hat no such review shall impose liability on the personal representative as to any property which was distributed by him in accordance with a decree of court before the filing of the petition. The court or master considering the petition may include in his adjudication or report findings of fact and of law as to the entire controversy, in pursuance of which a final order may be made.

20 Pa.C.S. § 3521. The Hospitals and Bowen initially argue that the Heirs' petition is time-barred, as section 3521 requires that any petition be brought within 5 years of the final confirmation of any account. The Heirs respond that, because they were never notified of the pendency of the 1988 proceedings, the decree is void; or, in the alternative, that Bowen's actions were fraudulent, thus avoiding the 5-year

bar. The trial court concluded that the Heirs did not receive the statutorily required notice and that therefore, pursuant to *In re Galli's Estate*, 340 Pa. 561, 17 A.2d 899 (1941), the 1988 adjudication was void. For the reasons that follow, we agree.

¶ 9 We first review Bowen's efforts to notify the Heirs. Bowen was appointed executor on September 16, 1986. He contacted Eleanor Adams, a Russian-language translator, to make inquiries to the Soviet Union for potential heirs. Adams testified that her experience was as an interpreter/translator, not as a genealogist, and that she had no prior experience locating heirs. Bowen waited almost six months after his appointment as executor to ask Adams to begin her efforts, despite the fact that the will provided only one year to locate heirs. In his correspondence with Adams, Bowen included several papers from his files regarding potential heirs, including an address in Tbilisi, Georgia, U.S.S.R., and the first names "Nina" and "Valentina". Critically, although the family names "Lobanova" and "Ockropiridge" were available in his records and in a prior will of decedent drafted by Bowen, no surname information was given to Adams. Adams made two unsuccessful attempts to locate heirs by sending letters, which Bowen approved, addressed to "Occupants" at the Georgia address, without mentioning the will, and stating only that genealogical research was being done on the family of the decedent. The Heirs in fact lived in the apartment building at this address. Adams ultimately concluded that without additional information, such as possible surnames, a trip to Russia would be required.

¶ 10 Bowen did not send notice or inquiry to either a Georgian or Soviet consulate. This is contrary to Pennsylvania Orphans' Court Rule 13.2, which provides:

**Existence and Identity**

If it appears that the decedent may have heirs in a foreign country but their location, existence or identity is unknown, the fiduciary shall notify the consulate of

the country prior to audit of such facts as the fiduciary has which led him to the belief that the decedent may have had heirs in the country in question.

Pa.R.O.C. 13.2. As did the trial court, we conclude that these efforts denied the Heirs statutorily required notice.

¶ 11 Under statute and court rule regarding the duties of administrators and executors, Bowen was required to notify every person "known" to him as potential beneficiaries under the will. 20 Pa.C.S. § 3503 provides: [6]

**Notice to parties in interest**

The personal representative shall give written notice of the filing of his account and of its call for audit or confirmation to every person known to the personal representative to have or assert an interest in the estate as beneficiary, heir, next of kin or claimant, unless the interest of such person has been satisfied or unless such person fails to respond to a demand under section 3532(b.1) (relating to at risk of personal representative).

20 Pa.C.S. § 3503. Likewise, Orphans' Court Rule 6.3 requires notice to every person "known" to have or claim an interest in the estate.[7]

¶ 12 Although the statute and rule do not explicitly so state, we are satisfied that each contemplate that potential beneficiaries entitled to notice include those who were ascertainable by the exercise of due diligence on the part of the executor or administrator. The statute and rule presuppose that a personal representative, as an officer of the court and a fiduciary for the heirs and distributees, would make an honest effort to determine those persons lawfully entitled to the estate. Indeed, in describing a fiduciary's duty, our Supreme Court has stated:

This Court has continuously held that the "measure of diligence and care required of a trustee [or an executor] is precisely that which a man of ordinary prudence would practice in the care of his own estate.... **A reasonable degree of vigilance** and the exercise of good faith is the standard of the trustee's duty."

*In re Estate of Stephenson*, 469 Pa. 128, 138, 364 A.2d 1301, 1306 (1976) (quoting *Fahnestock's Appeal*, 104 Pa. 46, 52 (1883)) (emphasis added). Courts in other jurisdictions likewise have concluded that due diligence is implied by statutes with similar language. *See, e.g., Hesthagen v. Harby*, 78 Wash.2d 934, 481 P.2d 438, 443 (1971) (reading statute and rule requiring notice to "known" heirs to include heirs ascertainable with due diligence on the part of the administrator or executor).

¶ 13 The evidence in this case reveals that a reasonable investigation by Bowen would have located the Heirs. Bowen failed to utilize the information available in his own files to identify surnames of the Heirs; the Heirs indeed lived at the address to which inquiry was sent; to perform the search, he hired a translator, not an experienced genealogist; and he began his investigation only after a six-

6. Although it was amended in 1992, after the decree of distribution was entered in this case, the prior version of this statute reflects, for all purposes relevant here, substantially the same language. The version in effect at the time of the distribution stated:

**Notice to parties in interest**
The personal representative shall give written notice of the filing of his account and of its call for audit or confirmation to every unpaid claimant who has given written notice of his claim to the personal representative or his attorney of record, and to every other person known to the accountant to have an interest in the estate as beneficiary, heir, or next of kin.

7. Rule 6.3 states, in relevant part:
**Notice to parties in interest**
No account shall be confirmed unless the accountant has given written notice of the filing of the account and the call thereof for audit or confirmation to every unpaid claimant who has given written notice of his claim to the accountant and to every other person known to the accountant to have or claim an interest in the estate as creditor, beneficiary, heir or next of kin. Pa.R.O.C. 6.3.

month delay. His failure to perform a reasonable investigation was exacerbated by failing to notify a foreign consulate as required by Orphans' Court Rule 13.2. Therefore, we conclude that the Heirs were statutorily entitled to notice by Bowen, notice which they did not receive.

■ ¶ 14 The failure to notify potential heirs entitled to notice is a jurisdictional defect and renders any decree of the Orphans' Court void and the time barring provision of section 3521 inapplicable.[8] *In re Galli's Estate*, 340 Pa. 561, 570–72, 17 A.2d 899, 903–04 (1941); *In re Stewart's Estate*, 413 Pa. 190, 196 A.2d 330 (1964).

■ ¶ 15 As did the trial court, we find *In re Galli's Estate* instructive and controlling here. In that case, a trustee for the residue of an estate had, in one of several accountings and distributions, failed to notify one group of family members entitled to distributions and, six years later, they challenged the previous distributions. The trustee argued, by analogy, that the five-year limitation for petitioning to review a decree of distribution under a will (in the predecessor to section 3521) barred their suit. *Id.* at 568–69, 17 A.2d at 902. The Supreme Court held that the lack of notice rendered the distribution void:

> Because of the failure to give the actual notice required by statute, the decree ordering distribution was void as to appellant's claim. It could have no possible effect upon it. Such notice was indispensably necessary to give jurisdiction, and, without such notice and an opportunity to appellant to be heard, the decrees of the court were absolutely void.

*In re Galli's Estate*, 340 Pa. 561, 570, 17 A.2d 899, 903 (1941) (quoting *In re Shugars' Estate*, 312 Pa. 472, 476–77, 167 A. 567, 569 (1933)). In rejecting the trustee's argument that the five-year limitation in the review statute should apply, the Court continued:

> In thus attempting to establish an absolute limit of time for instituting these proceedings defendant overlooks the fact that this is not merely the case of an erroneous adjudication which some of the parties are seeking to correct, but one in which the adjudication is void so far as they are concerned and therefore never affected their rights.

*Id.* at 568–69, 17 A.2d at 902. For the same reasons, in this case, we conclude that the failure to notify the Heirs as required by statute rendered the 1988 decree of distribution void and the five-year limitation in section 3521 inapplicable.

¶ 16 Contrary to Bowen's assertions, the Pennsylvania Supreme Court's decision in *In re Estate of Burger*, 425 Pa. 395, 229 A.2d 463 (1967), does not alter this conclusion. In that case, the court held that a petition for review of a decree of distribution was untimely filed because it came after the will distributions already had been made. Such review expressly was prohibited under a predecessor to section 3521 which provided that "this section shall not authorize review as to any property distributed by the personal representative in accordance with a decree of court before the filing of the petition." *Id.* at 400, 229 A.2d at 466 (quoting Section 721 of the Fiduciaries Act of 1949, as amended, 20 P.S. § 320.721). That limitation is not part of the present version of this statute. *See* 20 Pa.C.S. § 3521.[9] Further, the court

---

8. Fraud by the administrator or executor is an additional exception to the time-barring provisions of section 3521. *Estate of Thomas*, 495 Pa. 93, 97, 432 A.2d 968, 969 (1981). While the court found that Bowen did misrepresent the facts about his attempts to locate heirs (Trial Court Opinion, 5/28/99, at 2), it did not find, and we find that the record does not support the conclusion, that Bowen intentionally acted to deprive the Heirs of notice. Nonetheless, as we hold that the initial adjudication was void, we need not address the fraud issues raised by the parties.

9. We also note that, contrary to the assertion in his brief (Brief for Appellant Bowen, at 21), the petition for review filed in *Burger* was not filed more than five years after the decree was entered, but less than 3 months later. *Burger*, 425 Pa. at 398, 229 A.2d at 465.

in *Burger* found that the interested parties were properly notified. 425 Pa. at 399, 229 A.2d at 465–66.

¶ 17 Bowen also cites *In re Timmins' Estate*, 338 Pa. 475, 13 A.2d 7 (1940), for the proposition that lack of notice may excuse the 5 year bar only where notice was legally required. As we discussed above, we find that notice to the Heirs was legally required.

¶ 18 Finally, the cases cited by the Hospitals in support of the absolute nature of the time-bar provision of section 3521 (except in cases of fraud) and the need for finality in such proceedings are inapt because, in each of the cited cases, either the proper notice was provided, or the court concluded that it was not required. *See Estate of Thomas*, 495 Pa. 93, 432 A.2d 968 (1981); *Estate of Doerr*, 388 Pa.Super. 474, 565 A.2d 1207 (1989); *Burger Estate*, 425 Pa. 395, 229 A.2d 463 (1967); *Colladay's Estate*, 333 Pa. 218, 3 A.2d 787 (1939); *In re Estate of Braun*, 437 Pa.Super. 372, 650 A.2d 73 (1994); *In re Timmin's Estate*, 338 Pa. 475, 13 A.2d 7 (1940); *Estate of Bach*, 426 Pa. 350, 231 A.2d 125 (1967).

¶ 19 Therefore, given that the Heirs did not receive statutorily-required notice, we find that section 3521 does not pose a bar to their petition and that the 1988 decree is void.[10]

¶ 20 Bowen additionally argues that the Russian heirs, because they are nonresident aliens, are not entitled to the constitutional protections of due process and, for the same reason, that they do not have standing to challenge the decree. We need not reach the due process issue because, as we discussed above, the failure to give the statutorily-required notice rendered the Orphans' Court without jurisdiction to enter the decree; this is true regardless of whether, in the absence of such a statutory obligation, the Russian heirs

would have been entitled to argue a deprivation of due process.

¶ 21 Also, we find Bowen's standing argument to have been waived. Challenges to a litigant's capacity to sue must be raised by way of preliminary objections or answer. *Huddleston v. Infertility Center of America*, 700 A.2d 453, 457 (Pa.Super.1997). Here, the first time Bowen raised this issue was in his post-trial motions. Therefore, it is waived.

¶ 22 Having concluded that the trial court properly determined that the 1988 decree of distribution is void, we now turn to an analysis of its remedy. The trial court ordered the Hospitals to return the wrongfully distributed funds. The court clearly had the power to issue this order. *See In re Jones*, 442 Pa.Super. 463, 660 A.2d 76, 79 (1995) (affirming order of trial court that part of erroneous distribution be returned to satisfy claims of newly discovered heirs). Neither Bowen nor the Hospitals appear to challenge this.

¶ 23 The trial court further ordered that interest be assessed on the returned funds from November 1997, the date of its *decree nisi*. (Trial Court Final Decree, 1/28/99, amending Decree Nisi.) The Heirs requested, and the trial court denied, the imposition of interest on the bequests from the time of the original 1988 adjudication (or, in the alternative, from the date the Hospitals were first notified of the Heirs' claims). The trial court found that the Hospitals were innocent parties and that consideration of the "equitable balance" between the parties did not warrant the imposition of prejudgment interest. (Trial Court Opinion, 1/28/99, at 4.)

¶ 24 The award of interest is within the sound discretion of the chancellor according to the equities of a case and will not be disturbed on appeal absent an abuse of that discretion. *See Sack v. Fein-*

---

**10.** Bowen additionally asserts that this petition should be barred by laches. (Brief for Appellant Bowen, at 29–30.) The record does not support his contention that the Heirs un-

necessarily delayed in asserting their claims once they became aware of the factual basis for them.

*man*, 495 Pa. 100, 104–05, 432 A.2d 971, 973 (1981). After a thorough review of the record in this matter, we find that the learned court abused its discretion in this regard.

¶ 25 This Court has approved of the award of prejudgment interest in particular cases:

> While the general rule is that a successful litigant is entitled to interest beginning only on the date of the verdict, it is nonetheless clear that pre-judgment interest may be awarded "when a defendant holds money or property which belongs in good conscience to the plaintiff, and the objective of the court is to force disgorgement of his unjust enrichment."

*Kaiser v. Old Republic Ins. Co.*, 741 A.2d 748, 755 (Pa.Super.1999) (quoting *Dasher v. Dasher*, 374 Pa.Super. 96, 542 A.2d 164, 164–65 (1988)). Pre-judgment interest "in such cases is a part of the restitution necessary to avoid injustice." *Id.*

¶ 26 In this case, there are three possible dates from which interest could be assessed. The first is the date of the original distribution, April 1988, as the Heirs have been improperly deprived of the funds since that date. The second is the date on which the Hospitals initially were informed of the Heirs' claim, and thus were on notice of those claims. The parties stipulated that the Hospitals were so notified on or about September 27, 1994. (Stipulation of Facts, R. 89a, ¶ 11.) The Heirs argue that one of these two dates is appropriate. A third possibility – the one chosen by the trial court – is to award interest from the date the Hospitals were ordered to return the money in November 1997. The trial court explained its decision as follows:

> Although the respondent hospitals wrongfully received the petitioners' distributions from the estate, they were innocent parties. They should return the principal distributions, to which they were not entitled. To charge them with interest for the entire length of time until the error was discovered would be

unjustly harsh. Thus, we intended to strike an equitable balance by only imposing interest once it had been judicially determined that the funds did not belong to the respondents.

(Trial Court Opinion, 1/28/99, at 4.) We find the trial court's reasons for the exercise of its discretion to be unpersuasive and therefore set aside its decision in this regard. *See Sack*, 495 Pa. at 103, 432 A.2d at 973.

¶ 27 Rather, we find that the Restatement of Restitution provides the proper framework for our analysis. Section 123 states:

**Bona Fide Transferee Who Is Not a Purchaser for Value**

A person who, non-tortiously and without notice that another has the beneficial ownership of it, acquires property which it would have been wrongful for him to acquire with notice of the facts and of which he is not a purchaser for value is, **upon discovery of the facts, under a duty to account** to the other for the direct product of the subject matter and the value of the use to him, if any, and in addition, to:

> a) return the subject matter in specie, if he has it;
>
> b) pay its value to him, if he has non-tortiously consumed it in beneficial use;
>
> c) pay its value or what he received therefor at his election, if he has disposed of it.

Restatement of Restitution § 123 (1937) (emphasis added); *see also Solomon v. Gibson*, 419 Pa.Super. 284, 615 A.2d 367, 369 (1992) (quoting with approval section 123); *Diesel v. Caputo*, 244 Pa.Super. 195, 366 A.2d 1259, 1266–67 (1976) (same). The comment to section 123 specifically notes its application to "a person who, by gratuitous grant, by will or by descent, has received" property. Restatement of Restitution § 123 cmt. a. Further, sections 156 and 157 require the imposition of interest

upon breach of the duty to make restitution.[11]

¶ 28 Here, the "discovery of the facts" by the Hospitals occurred in September 1994 when counsel for the Heirs notified the Hospitals of their claims and, therefore, triggered the duty to make restitution under section 123. Consistent with the Restatement, it is this date that we conclude is the appropriate date from which to impose interest. *See also Park v. Greater Delaware Valley Sav. & Loan Assoc.*, 362 Pa.Super. 54, 523 A.2d 771 (1987) (imposing interest on mortgagors for sums erroneously unpaid to mortgagees' predecessor-in-interest from date of notification by mortgagees' of sum owed). Further, we cannot find from the record that there is some "overriding inequity" that would result from an award of interest in this fashion. *See Sack*, 495 Pa. at 105, 432 A.2d at 974.

¶ 29 We must reject the Heirs' argument that interest should be imposed from 1988, the date on which the Hospitals improperly received the funds. We can find no support in the reported decisions of Pennsylvania courts for the imposition of interest, as part of a restitutionary remedy, on an innocent party covering the time before which they learned of their wrongful receipt of funds.

¶ 30 Finally, the Heirs assert that Bowen should be surcharged to the degree that they have been damaged by his actions in failing, in the first instance, to notify them as beneficiaries under the will. As did the trial court, we conclude that this issue is not properly before us. The Heirs' petition to open the 1988 adjudication cannot be read to include any request for relief against Bowen. (Petition for Citation to Show Cause Why Adjudication Dated February 25, 1988, Should Not Be Vacated, Opened, and Reviewed, 5/10/96, R. 6a–47a.) Regarding surcharge, the trial court stated in its final decree that "the petitioners may follow the proper procedures for the Court to consider a surcharge against the executor." (Trial Court Final Decree, 1/28/99, at 4.) No such surcharge petition has been brought, and the Heirs' attempt to raise the issue in post-trial motions and on appeal is insufficient. Thus, these claims are not properly before us. As a result, we need not address Bowen's assertion that the statute of limitations poses a bar to these claims (Bowen Brief for Appellant, at 30–31), ... or whether the doctrine of res judicata may bar these claims due to the prior federal case (Brief for Appellant Bowen, at 26–29).

¶ 31 We conclude that the trial court properly ordered the Hospitals to return the funds to the Heirs and therefore affirm its order with respect thereto. However, we *reverse and remand* with instructions to the trial court to modify its final decree and impose interest on the returned funds from September 27, 1994.

---

11. Section 156 states:

**Interest.**

Subject to the rules stated in § 157, a person who has a duty to pay the value of a benefit which he has received, is also under a duty to pay interest upon such value from the time he committed a breach of duty in failing to make restitution if, and only if:

(a) the benefit consisted of a definite sum of money, or

(b) the value of the benefit can be ascertained by mathematical calculation from the terms of an agreement between the parties or by established market prices, or

(c) payment of interest is required to avoid injustice.

Section 157 states:

**Restitution of Direct Product and Compensation For Use.**

(1) A person under a duty to another to make restitution of property received by him or of its value is under a duty

(a) to account for the direct product of the subject matter received while in his possession, and

(b) to pay such additional amount as compensation for the use of the subject matter as will be just to both parties in view of the fault, if any, of either or both of them.

(2) The rule stated in Subsection (1) is applicable to an action brought solely to recover the income or value of the use of the subject matter, or interest upon the amount of its value.

¶ 32 Affirmed in part, reversed in part and remanded. Jurisdiction relinquished.